## Pasqualli Lolli, Appellee, v. Spring Valley Coal Company, Appellant.

### Gen. No. 6,004.   (Not to be reported in full.)

Appeal from the City Court of Spring Valley; the Hon. W. H. HAWTHORNE, Judge, presiding. Heard in this court at the October term, 1914. Reversed and remanded. Opinion filed March 9, 1915.

### Statement of the Case.

Action brought by Pasqualli Lolli against the Spring Valley Coal Company for injuries sustained by the plaintiff while driving a trip in the defendant's mine. From a verdict and judgment in favor of the plaintiff, the defendant appeals.

The case was submitted to the jury on counts of the declaration alleging a wilful violation of the statute governing mines and miners.

The accident occurred in a straight entry or roadway which slightly inclined inwardly towards the face

of the mine. At the time the plaintiff was driving two mules tandem to a trip. A chain extended from the center of the forward of the two cars comprising the trip to the center of a butt stick which was about thirty-four inches in length. The rear mule wore a collar and hames, with tugs extending from the hames on each side of the mule to the ends of the butt stick, and hooked thereon. The front car was partially loaded with props, and several men were in the car going into the mine. The second car was empty. The plaintiff occupied the usual driver's seat on the left-hand front side of the car, with his legs hanging down in front of the car. The car was without brakes and the plaintiff did not have sprags with which to check its motion. The rails were forty-one inches apart. At the left-hand side of the entry there was a post supporting the roof, about twelve inches from the rail. At this point the rear mule turned around sideways with his rear parts to the left-hand side. The plaintiff claimed that the left end of the butt stick caught on the post, and that his left leg was caught either between the butt stick and the car, or the mule and the car, or both, and that certain bones thereof were broken. The plaintiff claimed that the presence of the post so near the car was a dangerous condition, while the defendant claimed that as the post had been in the same place for three or four years actual use showed that it was not dangerous.

The second count of the plaintiff's declaration charged that the mine manager wilfully violated the statute in failing to have the roadway at that place examined by a certified mine examiner at the times required by the statute, and to cause the examiner to report the dangerous condition in a book provided for that purpose, before the men were permitted to enter the mine on that day. The third count charged that the mine examiner wilfully failed to inspect this roadway and to observe whether there were dangerous

conditions; and that he wilfully failed to place a con-spicuous mark at the place. The fourth count charged that the mine examiner wilfully failed to make a record of his examination in a book kept for that purpose; wilfully failed to mention in said record the dangerous condition at said timber; wilfully failed to make such record that morning before the miners were permitted to enter the mine; wilfully failed to take possession of the plaintiff's entrance check and the checks of all others who had to drive trips along such roadway, and wilfully failed to give such entrance checks to the mine manager before the men entered the mine that morning. Each count charged that such wilful violations of the law caused or substantially contributed to the plaintiff's injury.

McDougall, Chapman & Bayne, for appellant; Mastin & Sherlock, of counsel.

John L. Murphy and Duncan & O'Conor, for appellee.

Mr. Justice Dibell delivered the opinion of the court.

### Abstract of the Decision.

1. MINES AND MINERALS, § 86*—*when manager may not rely on examiner's belief in safety of mine.* A mining company cannot escape liability for injuries received by a miner from a dangerous condition in a mine, because the mine examiner honestly concluded that a condition was not dangerous which was, in the opinion of the court and jury, in fact actually dangerous.

2. MINES AND MINERALS, § 86*—*when question whether dangerous condition exists not dependent on judgment of mine examiner.* The question whether a condition in a mine is actually dangerous cannot depend on the judgment of the mine examiner or experienced miners so as to relieve a mining company from liability for injuries to a miner from a condition which, in the opinion of the court or jury, was actually dangerous.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

Lolli v. Spring Valley Coal Co., 193 Ill. App. 234.

3. MINES AND MINERALS, § 185*—*when verdict should not be directed for plaintiff in action for injury to miner.* An instruction in an action for injuries sustained by a miner from a dangerous condition in a mine, which in fact directed a verdict for the plaintiff if the jury found that the book containing the mine examiner's report was kept in an engine room in violation of the Mining Act, *held* erroneous where the declaration did not allege that such book was kept in the engine room or other improper place.

4. MINES AND MINERALS, § 187*—*when instruction as to miner reading mine examiner's record of condition of mine erroneous.* An instruction in an action for injuries received by a miner from a dangerous condition in a mine, that if such condition existed and the mine examiner wilfully failed to record it in a book kept for that purpose, or wilfully failed to mention it in such record before the miners entered the mine for the day, and the plaintiff was injured by the examiner's conduct, that it would make no difference whether the plaintiff read or attempted to read such record or was able to read the language in which it was written, *held* erroneous where the condition of the mine was entered as being safe instead of stating the actual conditions.

5. MINES AND MINERALS, § 182*—*when reading by or ability of miner to read examiner's record of mine conditions may be shown.* In determining whether the failure of the mine examiner to examine and record, in a book kept for that purpose, a dangerous condition in a mine, was the cause of a miner's injury, the jury may consider whether he read or attempted to read the record before entering the mine on the day of the accident, and also his ability to read the language in which it was written.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.